UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY MALDONADO,

                             Plaintiff,

v.

WESTCHESTER COUNTY, et al.,

                            Defendants.
-----------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

18-CV-11410 (PMH)

PHILIP M. HALPERN, United States District Judge:

       Plaintiff Anthony Maldonado ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action with the filing of his Complaint on December 4, 2018. (Doc. 2, "Compl."). Plaintiff presses claims against twelve Defendants[1] under 42 U.S.C. § 1983 related to substandard and inadequate kosher meals he received while detained by the Westchester County Department of Corrections ("WCDOC") at the Westchester County Jail ("WCJ") from August 9, 2018 through December 4, 2018.

       Pending presently before the Court is Defendants' motion to dismiss dated June 29, 2020. (Doc. 52; Doc. 53, "Defs. Br."). Defendants' motion is unopposed.[2]

       For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] The Defendants include Westchester County, Aramark Correctional Services LLC, Manuel Mendoza, Darnell Flax, Penny Stewart, Leandro Diaz, Eric Middleton, Francis Delgrosso, LaFonda Spaulding, Donna Blackman II, Sgt. Sorrentino, and Sgt. Lopez.

[2] Plaintiff's brief in opposition to Defendants' motion was due July 29, 2020. (Doc. 48). The docket reflects that Plaintiff was served with a copy of the Order setting forth the briefing schedule for Defendants' motion (Doc. 49) as well as a copy of Defendants' motion and supporting papers (Doc. 53-2). After being served with Defendants' motion, Plaintiff did not file a brief in opposition, request an extension of time to file a brief, or otherwise communicate with the Court. In fact, since Plaintiff filed a motion seeking compensation on July 9, 2019 (Doc. 20), Plaintiff has not communicated with the Court in any way. After this case was reassigned to me on April 16, 2020, I requested that the parties jointly file a status report. (Doc. 44). On May 15, 2020, Defendants filed a status report and notified the Court that they had not been able to contact Plaintiff and thus the status report was being filed on behalf of Defendants only. (Doc. 47). At no point thereafter did Plaintiff comply with the Court's Order and provide a status report or respond to the status report filed by Defendants.

## BACKGROUND

Plaintiff alleges that he was served "substandard" meals at WCJ that caused him to become sick. (Compl. at 6).[3] Plaintiff states that he is Jewish and on a kosher diet. (*Id*.). The kosher meals Plaintiff alleges to have been served have included stale and/or moldy bread; rotting and mushy fruit; and soggy, brown, and smelly salad. (*Id*.). Additionally, Plaintiff alleges that on seven occasions he was served food contaminated with human hair and on four occasions he was served a salad that contained an insect. (*Id*.). Furthermore, Plaintiff claims that certain food items are frequently missing from his kosher meals. (*Id*.). Plaintiff avers that the food he is served interferes with his religious beliefs. (*Id*. at 7).

According to legal research conducted by Plaintiff, the practice of serving inadequate food "has been in existence at WCDOC for an extended duration, and multiple WCDOC officials had knowledge of it – through previous and present lawsuits but they fail[ed] to intervene." (*Id*.). Plaintiff has allegedly filed multiple grievances related to the inadequate food he received, but the grievances were all denied. (*Id*.). Plaintiff avers that certain Defendants were engaged in a "federal conspiracy" to deprive Plaintiff of his civil rights by serving him "old, expired food, so that they can save and make money." (*Id*. at 9).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the

---

[3] When citing to Plaintiff's Complaint, the Court refers to the pagination generated by ECF.

misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just. and Immigr. & Naturalization Serv.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading

requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009))).

When deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-5286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). Thus, it is appropriate for the Court to test the legal sufficiency of Plaintiff's Complaint even without the benefit of a brief in opposition to Defendants' motion from Plaintiff.

## ANALYSIS

Plaintiff s Complaint raises, under 42 U.S.C. § 1983, four claims for relief including: (1) an Eighth or Fourteenth Amendment claim related to unconstitutional conditions of confinement; (2) a First Amendment claim related to interference with his ability to practice his religion; (3) a *Monell* municipal liability claim; and (4) a "federal conspiracy" claim. The Court analyzes Plaintiff's claims *seriatim*.

I.      Unconstitutional Conditions of Confinement Claim

As an initial matter, Plaintiff's Complaint is silent as to whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the events giving rise to this dispute. If Plaintiff was a convicted prisoner, the Court would analyze his claim pursuant to the Eighth Amendment's Cruel and Unusual Punishments Clause; and, if Plaintiff was a pretrial detainee, the Court would analyze his claim pursuant to the Fourteenth Amendment's Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003)). Because Plaintiff's status is unclear, and because Plaintiff alleges violations of both the Eighth and Fourteenth Amendments, the Court analyzes Plaintiff's claim under the more generous Fourteenth Amendment standard applicable to pretrial detainees.[4] *See Booker v. City of N.Y.*, No. 17-CV-7035, 2018 WL 4616048, at *3 n.2 (S.D.N.Y. Sept. 26, 2018) (noting that because "[p]laintiff's complaint does not state whether he was a pretrial detainee at the time of the events alleged in his [c]omplaint or was serving a sentence following conviction[,] . . . [f]or purposes of the pending motion the Court assumes that plaintiff was a pretrial detainee and accordingly analyzes his deliberate indifference claim under the slightly more generous Fourteenth Amendment standard.").

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citing *Benjamin*, 343 F.3d at 50). The Fourteenth Amendment unconstitutional conditions of confinement test requires the detainee to

---

[4] The Court notes, however, that even if Plaintiff's unconstitutional conditions of confinement claim were asserted properly under the Eighth Amendment, it would likewise fail. As the Court explains *infra*, Plaintiff has failed to allege facts which support an inference that Plaintiff can satisfy the objective prong of a Fourteenth Amendment claim. Because "[f]or both the Eighth and Fourteenth Amendments, the objective prong poses the same standard," *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020), Plaintiff would not be able to satisfy the Eighth Amendment standard either.

satisfy "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id*.

Regarding the objective prong, the conditions of confinement are deemed sufficiently serious if the detainee can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id*. at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). There is no "static test" to determine whether a detainee's conditions of confinement were sufficiently serious to constitute a deprivation of the right to due process; "instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id*. (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). At the motion to dismiss stage, the Court must determine whether the detainee's allegations lead to the plausible inference that the detainee was "deprived of [his] 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety'" or whether the detainee was "exposed 'to conditions that pose an unreasonable risk of serious damage to [his] future health.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)).

The Constitution requires that "prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). Isolated incidents of food contamination generally "do[] not rise to the level of a substantive due process violation." *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *8 (S.D.N.Y. Mar. 28,

2018); *see also Jumpp v. Simonow*, No. 20-CV-138, 2020 WL 4059850, at \*11 (D. Conn. July 20, 2020) ("Generally, a single incident of contaminated food does not rise to the level [of] a constitutional violation without allegations that the quality and preparation of the food fell so short of basic standards that the food posed an unreasonable risk of serious damages to a plaintiff's health."); *Warren v. City of New York*, No. 18-CV-4410, 2020 WL 353772, at \*3 (S.D.N.Y. Jan. 21, 2020) (same).

Here, Plaintiff alleges that the meals he was served were inadequate. Specifically, he alleges that the meals included stale and/or moldy bread; rotting and mushy fruit; soggy, brown, and smelly salad; and, on multiple occasions, food contaminated with hair or insects. (Compl. at 6). To prove the objective prong of a Fourteenth Amendment claim premised on the receipt of inadequate or contaminated food while detained—Plaintiff does not allege that he was deprived of food altogether—Plaintiff must show that was he was "exposed 'to conditions that pose an unreasonable risk of serious damage to [his] future health.'" *Jabbar*, 683 F.3d at 57 (quoting *Phelps*, 308 F.3d at 185). Based upon Plaintiff's allegations, the Court simply cannot infer plausibly that he can satisfy this standard. While the food Plaintiff was served may not have been to his liking, it did not pose a serious risk of future harm to his health. *See White v. Westchester Cty.*, No. 18-CV-990, 2018 WL 6493113, at \*4 (S.D.N.Y. Dec. 10, 2018) (finding that plaintiff's allegations that "he found a dead insect on his meal tray once, and hair in his food three times . . . did not pose a serious risk of damage to plaintiff's health."). Accordingly, Plaintiff's Fourteenth Amendment unconstitutional conditions of confinement claim is dismissed.[5]

---

[5] The Court need not, and does not, consider whether Plaintiff can satisfy the subjective prong of the Fourteenth Amendment unconstitutional conditions of confinement test because the failure to satisfy the objective prong is fatal to Plaintiff's claim.

II.     First Amendment Burden on Religion Claim

Plaintiff next alleges that the substandard food he was provided "places a burden on [his] religion and interferes with [his] ability to eat foods that conform to [his] religious beliefs." (Compl. at 7). "Prisoners have a right 'to receive diets consistent with their religious scruples.'" *Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) (quoting *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)). Here, Plaintiff does not allege that he was denied kosher meals; in fact, he alleges that he was consistently provided with kosher meals. (Compl. at 6 ("I am a Jewish inmate who receives a Kosher diet."); *id*. ("My Kosher meal generally arrives to me with . . . .")). Rather, Plaintiff merely alleges that the quality of the kosher meals provided was inadequate and thus places a burden on his ability to practice his religion. Plaintiff's allegations are conclusory, as he in no way establishes how the allegedly substandard food burdened or interfered with his ability to practice his religion. Plaintiff has pointed to no authority which establishes that the service of substandard kosher meals imposes a burden on one's free exercise rights.

Furthermore, even if the substandard meals did in some way impose a burden, "incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim." *Washington v. Afify*, 968 F. Supp. 2d 532, 538 (W.D.N.Y. 2013) (collecting cases). Accordingly, because Plaintiff alleges that he did receive kosher meals and fails to allege how the meals he received violated or burdened his ability to practice his religion, plaintiff's First Amendment claim is dismissed.

III.    *Monell* Municipal Liability Claim

Plaintiff also asserts a *Monell* municipal liability claim against Westchester County (the "County"). "It is well established that a municipality may not be held liable under Section 1983

for alleged unconstitutional actions by its employees below the policy-making level solely upon

the basis of respondeat superior." *Ukeje v. N.Y.C. Health & Hosps. Corp.*, 821 F. Supp. 2d 662,

669 (S.D.N.Y. 2011) (citing *Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658

(1978)). Rather, to prevail on a *Monell* claim against a municipality "the plaintiff must plead and

prove that the violation of constitutional rights resulted from a municipal custom or policy." *Id.*

at 670 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-83 (1986)). Thus, to assert a

*Monell* claim against a municipality, Plaintiff must plausibly allege and ultimately prove three

things: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial

of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista*

*v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Proof of the existence of a municipal policy or custom is required because a plaintiff

must demonstrate that "the municipality took some action beyond merely employing the

[allegedly] misbehaving officers." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363,

390 (S.D.N.Y. 2013) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

There are several ways in which a Plaintiff can demonstrate that an official policy or custom

existed including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Id.*

Interpreting Plaintiff's Complaint with the liberality required for *pro se* pleadings, Plaintiff attempts to establish an official policy or custom by utilizing the third and fourth methods listed above. Plaintiff alleges that "the County has been named in over 40 food related lawsuits due to acts and/or omissions of Aramark at WCDOC, but they fail to intervene and train and supervise their contractors." (Compl. at 10). First, the generic and conclusory references to forty other food-related lawsuits does not establish a practice so persistent or widespread to constitute a custom or policy. *See Rutherford v. Westchester Cty.*, No. 18-CV-4872, 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28, 2020) ("Plaintiff's claims that Defendants were previously sued for similar conduct is similarly general; Plaintiff does not describe the conduct alleged in these suits in any detail, nor explain whether and how the conduct alleged in those suits was widespread and consistent."); *Rivera v. Westchester Cty.*, No. 18-CV-8354, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) ("Although Plaintiff alleges that numerous similar lawsuits, grievances, and complaints against Aramark have been filed, he fails to provide any factual details regarding these other lawsuits and grievances. The absence of such detail dooms Plaintiff's Complaint."). The complete paucity of detail regarding the other allegedly similar food related lawsuits is insufficient to establish a persistent or widespread practice. *Mercedes v. Westchester Cty.*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim because "[p]laintiff simply does not allege any factual indicia from which this Court could infer the existence of a policy or custom.").

Second, Plaintiff has failed also to state a *Monell* claim premised on a failure to train or failure to supervise theory of liability. A failure to train *Monell* claim requires a plaintiff to "allege facts which support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his constitutional

10

injuries." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (*Acosta v. N.Y.C.*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012)). Plaintiff's conclusory allegations do not permit the plausible inference that he can prevail on such a claim. As for a failure to supervise *Monell* claim, a "municipality may be liable for the failure to supervise . . . its employees 'only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Id.* at 538 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). Again, Plaintiff's conclusory allegations are insufficient. *See, e.g., Rivera*, 2019 WL 3958425, at *5 (holding that plaintiff's "boilerplate assertions" that municipality "failed to train and supervise its staff… [are] insufficient, without more, to state a *Monell* claim."). Accordingly, because Plaintiff has failed to allege the existence of an official policy or custom of the County, Plaintiff's *Monell* claim is dismissed.

Finally, and separately dispositive of Plaintiff's *Monell* claims, Plaintiff cannot establish the third element of a *Monell* claim: a denial of a constitutional right. The Court has already found *supra* that Plaintiff failed to state a Fourteenth Amendment unconstitutional conditions of confinement claim or a First Amendment burden on religion claim.

IV.   Federal Conspiracy Claim

Finally, Plaintiff alleges that certain Defendants "have engaged in a federal conspiracy . . . by deliberately minimizing or attempting to reduce [his] claims in an effort to allow Aramark to continue to serve [him] and other WCDOC inmates[] old, expired food, so that they can save and make money." (Compl. at 9). Conspiracy is not a standalone cause of action; rather, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*,

11

51 F. Supp. 3d 319, 347 (S.D.N.Y. 2014) (quoting *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986)). "[T]o properly plead a conspiracy pursuant to § 1983, plaintiffs must allege '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 428 (S.D.N.Y. 2013) (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). Here, Plaintiff's Complaint does not identify any actionable, underlying tort. Thus, Plaintiff's federal conspiracy claim is dismissed. Additionally, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Id.* Because Plaintiff's conspiracy allegations are wholly conclusory, the federal conspiracy claim could be dismissed on this ground as well.

V.     Motion for Compensation

On July 9, 2019, Plaintiff filed a Notice of Motion seeking compensation in the amount of $250,000. (Doc. 20). There is no memorandum of law filed in support of the motion and Plaintiff only filed his Complaint in support thereof. (Doc. 19). Plaintiff points to no authority which entitles him to compensation, and the Court is aware of none. Additionally, having dismissed all of Plaintiff's claims, the Court denies Plaintiff's request for compensation as moot.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court dismisses Plaintiff's Complaint with prejudice as any amendment would be

futile.[6] The Court directs the Clerk to terminate the pending motion (Doc. 52) and terminate this

action. The Court further directs the Clerk to mail a copy of this Memorandum Opinion and

Order to Plaintiff at the address provided on the docket.


Dated: New York, New York
       February 2, 2021

SO ORDERED:

_____

Philip M. Halpern
United States District Judge

---

[6] The Court notes that it appears that Plaintiff has abandoned this litigation. Plaintiff did not file a brief in opposition to Defendants' motion to dismiss and has not communicated with the Court in any way since he filed his motion for compensation on July 9, 2019. (Doc. 20). Thus, and separately, the Court finds that dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) would be appropriate. *See Hutter v. Countrywide Bank, N.A.*, No. 09-CV-10092, 2017 WL 108059, at *3 (S.D.N.Y. Jan. 9, 2017) ("[W]hen a plaintiff abandons or neglects a cause of action, it can be dismissed for want of prosecution." (citing Fed. R. Civ. P. 41(b))).